After the hearing in Lenoir on 24 October 1995, the parties took the depositions of Drs. E. Brown Crosby and William Pekman. Deputy Commissioner Garner admitted into evidence over Plaintiff's objection a rating supplied by Dr. Pekman after the deposition.
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission has determined that it was error for the Deputy Commissioner to admit the rating given by Dr. Pekman after his deposition and without any opportunity for the Plaintiff to cross examine Dr. Pekman with respect to the rating and over Plaintiff's objection. Accordingly, the Full Commission modifies the Opinion and Award of Deputy Commissioner Garner and, as modified, affirms the Opinion and Award.
****************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an Employment relationship existed between the Plaintiff and the Defendant-Employer.
3. At all relevant times, Broyhill was a duly qualified self insured with Trigon Administrators as its servicing agent.
4. The Employee-Plaintiffs average weekly wage is $348.84, yielding a compensation rate of $232.33 per week.
5. Employee-Plaintiff worked at reduced wages from February 20, 1995, through March 21, 1995, and from April 25, 1995, through August 21, 1995. She was out of work from March 22, 1995, through April 24, 1995.
6. The issues to be determined are whether Plaintiff is suffering from an occupational disease and, if so, the amount of compensation which is to be paid by Defendant, including any temporary total disability payments, temporary partial disability payments' and permanent partial disability. Also, Defendant submitted as an additional issue whether it is responsible for any medical bills from Dr. E. Brown Crosby.
****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of hearing, Employee-Plaintiff worked at Broyhill's Lenoir plant as a spray paint operator and had been so employed since June 10, 1995. Prior thereto, she had been employed since February of 1987 as a "Master Assembler." This particular job included operating an air-powered screwdriver which placed screws into case goods in bedroom suites.
2. In her job as a Master Assembler, Employee-Plaintiff operated an air driven screwdriver which was suspended by a hose over her head. The screwdriver weighed two and three-quarter pounds. It had a magnetic end into which the screw head was placed. The screwdriver then held the screw via the magnet while Employee-Plaintiff placed the screw inside a pre-drilled hole in a block of wood. Plaintiff then pressed a button, which drove the screw into the wood via the already-existing hole. This job was not a production job and Plaintiff was not paid by the number of screws placed in the wood each day.
3. In June of 1994, Employee-Plaintiff began experiencing pain in her wrist. At some point, she mentioned this pain to Loretta Suddreth, the Plant Nurse, who provided her with compression grip, a stretchy material similar to an Ace bandage, to wrap around her wrist.
4. On July 8, 1994, Employee-Plaintiff saw her family physician, Dr. John Scroggin, who prescribed a wrist brace, which Employee-Plaintiff began wearing after that date.
5. On November 4, 1994, Employee-Plaintiff was seen by Dr. William Pekman, complaining of pain in both of her extremities, right more prominent than the left. Nerve conduction studies showed mild, bilateral, ulnar nerve compression, right greater than left.
6. By February 10, 1995, Employee-Plaintiff was no better, and Dr. Pekman ordered her off the Master Assembler job. On February 19, 1995, Employee-Plaintiff was transferred from the Master Assembler job to one placing drawers in case goods. This did result in a reduction of her wages.
7. By March 10, 1995, Employee-Plaintiff was no better and after being advised of her medical options, she chose to have surgery.
8. From April 25, 1995 through August 21, 1995, Plaintiff worked at reduced wages.
9. After August 21, 1995, Plaintiff worked on a spray paint job which paid the same as Employee-Plaintiff's previous job as a Master Assembler.
10. While treating Plaintiff, Dr. Pekman noted no further complaints with respect to her left arm. After surgery, he had ordered physical therapy for six weeks to Employee-Plaintiff's right arm only. No treatment whatsoever was rendered to the left arm.
11. On August 21, 1995, Employee-Plaintiff saw Dr. E. Brown Crosby on referral from her attorney. Dr. Crosby, after examining Plaintiff one time only, diagnosed bilateral ulnar nerve palsy, noting that an operation had already been performed to the right. Dr. Crosby related Employee-Plaintiff's problems to her job as a Master Assembler at Broyhill. He did not treat Employee-Plaintiff's conditions, nor did he recommend additional treatment for medical relief at that time nor order her to be out of work.
12. Dr. Crosby next saw Employee-Plaintiff on October 26, 1995, at which time he provided her with a permanent partial disability rating of twenty-five percent (25%) to each arm. The Full Commission accepts the 25% rating as to the right arm but rejects the 25% rating as to the left arm because Dr. Crosby's explanation of the permanency rating to the left arm was equivocal, at best. The Full Commission leaves open for later determination what permanent partial rating, if any, should apply to Plaintiff's left arm.
13. Dr. Pekman, Plaintiff's original treating physician, saw Plaintiff on June 14, 1996, and gave Plaintiff a ten percent (10%) rating to the right upper extremity. This is the rating that came in over Plaintiff's objection, which should not have been admitted into evidence by Deputy Commissioner Garner, and is therefore not to be considered in determining permanent partial disability.
14. Both Dr. Crosby and Dr. Pekman provided depositions with respect to this claim. Both doctors testified on hypothetical questions propounded by Plaintiff's attorney, that they felt that the master assembler job, as described by Plaintiff's attorney, placed Employee-Plaintiff at an increased risk for developing ulnar nerve problems and that her work with Defendant caused her occupational disease.
15. The occupational disease suffered by Plaintiff and treated by Dr. Pekman is compensable under the North Carolina Workers' Compensation Act.
16. In June of 1994, Employee-Plaintiff contracted compensable ulnar nerve neuropathy and tendinitis in her right hand which was caused or aggravated by her employment with Employer-Defendant.
17. Plaintiff's employment with defendant-employer exposed her to an increased risk of developing the occupational diseases ulnar nerve neuropathy and tendinitis.
****************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As the result of her occupational diseases ulnar nerve neuropathy and tendinitis, she is entitled to temporary total disability compensation at the rate of $232.33 per week for the periods of February 20, 1995, through March 21, 1995, and April 25, 1995, through August 21, 1995. G.S. § 97-29; G.S. § 97-53(13).
2. As the result of her occupational diseases ulnar nerve neuropathy and tendonitis, plaintiff is entitled to temporary partial disability at a rate of two-thirds the difference of her average weekly wage on the date her disability began, and the reduced average weekly wage she was able to earn from March 22, 1995, through April 24, 1995. G.S. § 97-30; G.S. § 97-53(13).
4. Although Employee-Plaintiff initially complained of problems with her left hand and arm, there is insufficient medical evidence that any problems with her left hand and arm require a permanency rating at this time. G.S. § 97-31.
5. As the result of the twenty-five (25%) percent permanent partial disability to the right hand sustained as the result of her occupational diseases, plaintiff is entitled to permanent partial disability compensation at the rate of $232.33 per week for a period of fifty weeks, commencing August 21, 1995, for the twenty-five percent (25%) rating to her right arm. G.S. § 97-31.
6. Defendant is responsible for the medical bills rendered by Dr. Crosby in connection with Plaintiff's visits with him concerning this case. N.C. Gen. Stat. § 97-25.
****************
Based on the foregoing findings of fact and conclusion of law the Full Commission enters the following:
AWARD
1. Defendant shall pay temporary partial disability payments at the rate of $232.33 per week for the periods of February 20, 1995, through March 21, 1995, and April 25, 1995, through August 21, 1995, subject to counsel fees awarded herein.
2. Defendant shall pay temporary total disability benefits, subject to counsel fee, at the compensation rate of $232.33 per week from March 22, 1995, through April 24, 1995.
3. Defendant shall pay permanent Plaintiff permanent partial disability compensation at the rate of $232.33 per week for a period of fifty weeks, commencing August 21, 1995, for the twenty-five percent (25%) rating to her right arm.
4. A reasonable attorney fee of twenty-five percent (25%) of all compensation is approved for Plaintiff's attorney and shall be deducted and paid directly to said attorney.
5. Defendant shall pay all medical treatment rendered to Plaintiff, including the medical expenses of Dr. Crosby, since Dr. Crosby gave a second opinion regarding Plaintiff's condition and rating.
6. Defendant shall pay the costs due the Commission.
7. The Full Commission leaves open for later determination what permanent partial rating, if any, should apply to Plaintiff's left arm.
 S/ _____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER